UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JANICE K.,[1]                                 )
                                              )
                    *Plaintiff*,              )
                                              )
            v.                                )        No. 1:21-cv-02330-JMS-MPB
                                              )
KILOLO KIJAKAZI, Acting Commissioner of the   )
Social Security Administration,               )
                                              )
                    *Defendant*.              )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Janice K. applied for supplemental security income ("SSI") from the Social

Security Administration ("SSA") in December 2014.  [Filing No. 10-2 at 58-59.]  In March 2017,

the SSA determined that Janice K. met the medical requirements to receive SSI.  [Filing No. 10-

2 at 64.]  Nevertheless, on May 2, 2017, the SSA determined that Janice K. was ineligible for

SSI benefits because she did not meet the non-medical eligibility requirements.  [Filing No. 10-2

at 64.]  Specifically, the SSA determined that Janice K. and her partner were in a "holding out"

marriage and had resources in excess of the $3,000.00 limit.  [Filing No. 10-2 at 64-70.]  On July

6, 2017, the SSA affirmed its ineligibility determination upon reconsideration.  [Filing No. 10-2

at 74-76.]  On January 8, 2019, a hearing was held before Administrative Law Judge Kevin

Walker ("the ALJ").  [Filing No. 10-2 at 22-57.]  The ALJ issued a decision on May 28, 2019,

concluding that Janice K. is not entitled to benefits because she and her partner, Juan C., are in a

"holding out" marriage and possess resources in excess of the $3,000.00 limit.  [Filing No. 10-2

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

at 17-20.]  The ALJ further ordered that Janice K. is liable for overpayment in the amount of $20,518.00.  [Filing No. 10-2 at 20.]  The Appeals Council denied review, [Filing No. 10-2 at 1-3], and Janice K. timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c), [Filing No. 1].  The Commissioner has filed a "Motion to Affirm in Part and Reverse in Part Pursuant to Sentence Four of 42 U.S.C § 405(g); Alternative Motion for Modification" ("the Motion").  [Filing No. 16.]

## I.
### STANDARD OF REVIEW

When an applicant for social security benefits appeals an adverse decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."  *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does, however, "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion."  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is

usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Janice K.'s initial application for SSI states: "I never was married." [Filing No. 10-2 at 58.]  In March 2017, the SSA determined that Janice K. met the medical requirements to receive SSI.  [Filing No. 10-2 at 64.]  However, before the benefits were issued, an SSA representative conducting a "preeffectuation review contact" ("PERC")[2] called Janice K.  [*See* Filing No. 10-2 at 54; Filing No. 10-2 at 78-79.]  After speaking with Janice K., the representative determined that Janice K. was in a "holding out" marriage, writing:

> I reviewed some of the medical evidence in the file prior to the PERC and found that [claimant] often told medical examiners that she lived with her husband. During the PERC she told me that she lives with her boyfriend and has for at least 10 years.  I asked how they introduce each other and she said as husband and wife because it's just easier.  They have a joint bank account.  About 6 years ago she said they established a "domestic partnership" so that she could be covered on his Eli Lilly health insurance.  She acknowledged that she has a common law relationship with Juan [C.], but was not aware as to how this would affect her SSI eligibility.  I have determined that they are holding out based on their statements.  In particular based on the fact that they consider themselves a domestic partnership.

[Filing No. 10-2 at 79.]

---

[2] According to the SSA's Program Operations Manual ("POMS"), "[a] PERC is the process of bringing up to date and/or fully documenting a claim after receipt of a notice of disability allowance."  SI 00603.030 Preeffectuation Review Contact (PERC) - Introduction, SSA POMS SI 00603.030.

In May 2017, the SSA notified Janice K. that although she met the medical requirements to receive SSI, her claim was being denied because she did not meet the non-medical eligibility requirements. [Filing No. 10-2 at 64.] Specifically, the SSA determined that Janice K. and Juan C. jointly owned a 2009 Pontiac Automobile worth $3,350.00 and had two checking accounts, each with a balance of $100.00. [Filing No. 10-2 at 70.] These assets totaled $3,550.00, which is $550.00 over the applicable resource limit. [Filing No. 10-2 at 70.]

Upon reconsideration, the SSA affirmed its conclusion that Janice K. was ineligible for SSI benefits, writing: "You alleged on the appeal form that you are 'not married.' This is true, but for SSI[,] a couple is considered married if they hold themselves out as a married couple to the community in which they live." [Filing No. 10-2 at 74.]

Janice K. requested a hearing before the ALJ, which was held on January 28, 2019. [Filing No. 10-2 at 22-57.] At the hearing, Janice K. testified that she and Juan C. had been in a relationship for 12 years. [Filing No. 10-2 at 30.] She stated that they chose not to get married because they had each been married twice before, "it didn't work out for either one" of them, and they decided not to "do it again." [Filing No. 10-2 at 30.]

Janice K. testified that she lives with Juan C. in a home that he owns. [Filing No. 10-2 at 29.] He refuses to put her name on the deed and will not give her rights of survivorship. [Filing No. 10-2 at 37.] Juan C. pays for housing costs and utilities, while Janice K. buys her own food using food stamps. [Filing No. 10-2 at 29-30.] Juan C. also pays for the gas and registration for Janice K.'s vehicle and gives her cash to cover other expenses. [Filing No. 10-2 at 31-32.]

Janice K. testified that she and Juan C. have powers of attorney for each other, and she is a beneficiary of his life insurance, along with his mother and sister. [Filing No. 10-2 at 37.] Janice K. explained that she wanted Juan C. to have a power of attorney so that, in the event of

her death, he can make her funeral arrangements and sell her property to cover the costs.  [Filing No. 10-2 at 38.]

Janice K. testified that she receives health insurance through Eli Lilly ("Lilly"), where Juan C. is employed.  [Filing No. 10-2 at 30.]  Janice K. is covered as Juan C.'s "domestic partner."  [Filing No. 10-2 at 42-43.]  Lilly defines a "domestic partner" as "a qualified adult who lives with a Lilly employee or retiree but who is not legally married to the employee or retiree," and provides that "[p]artners may be the same sex or the opposite sex."  [Filing No. 10-2 at 148.]  Lilly has several requirements for establishing a domestic partnership, including among other things that the employee and the domestic partner "are financially interdependent" and that "[n]either the employee nor the domestic partner is currently married."  [Filing No. 10-2 at 148.]

Regarding the medical records that purportedly identify Juan C. as Janice K.'s husband,[3] the following exchange occurred between the ALJ and Janice K.:

> [ALJ:] Okay.  Now, obviously, your doctors, at least for a while, thought you were husband and wife.  And I, and I know that doctors get in their mind, certain things and it get[s] in the file one time and that's, carries through for the rest of eternity.  You know, we see that all the time.
>
> [Janice K.:] I don't understand.  Dr. Patel's my psychiatrist.
>
> [ALJ:] Uh-huh.
>
> [Janice K.:] He doesn't even see Juan.  He's never even met Juan, so, where he got the impression that we're husband and wife -- 'cause when I go in to see him, he'll, he'll say something about, so how's your boyfriend doing or –
>
> [ALJ:] Mm-hmm.

---

[3] Although the parties appear to acknowledge that some of Janice K.'s medical records identified Juan C. as her husband, those medical records are not part of the administrative record currently before this Court.  [*See* Filing No. 10-2].  The hearing transcript reflects that Janice K.'s attorney discussed submitting these records to the ALJ, [*see* Filing No. 10-2 at 51-59], but it is unclear if that was ever done.

[Janice K.:] -- how's Juan doing?  He's never even done that, so why he listed us that way, I don't know.  Dr. Rogers is the family physician that Juan referred me to and he knows that Juan and I live together, so maybe there was some confusion there.

[ALJ:] Okay.

[Janice K.:] Although, generally, when I go to see him, it's about my illness, it has nothing to do with Juan.

[Filing No. 10-2 at 32-33.]

When asked by her attorney if she sometimes introduces Juan C. as her husband "just 'cause it saves time," Janice K. responded:

Never.  I've never introduced him as my husband.  I have introduced, I introduced him as my boyfriend.  People ask me why don't you get married and I tell them the same thing I told you.  We've both done that before and we're not about to do it again.  And I kinda get a kick out of telling people that I've had a boyfriend for 12 years.  I mean, it's kinda like, I, it's worked.  It worked better than both my marriages.

[Filing No. 10-2 at 39.]

Juan C. also testified at the hearing.  [Filing No. 10-2 at 41.]  He confirmed that he and Janice K. had been together for 12 years and had no desire to get married.  [Filing No. 10-2 at 42.]  He further confirmed that with respect to Janice K.'s living expenses, he "take[s] care of everything," except that Janice K. uses her food stamps to buy her own food.  [Filing No. 10-2 at 44.]  He also explained that he wanted to give Janice K. power of attorney so that she could make medical decisions and visit him in the hospital if necessary because his family lives out of state.  [Filing No. 10-2 at 45.]  According to Juan C., in the event of his death, Janice K. is to receive approximately 25 percent of the death benefits from Lilly, with the remainder of the benefits and his other assets to be distributed to his children and grandchildren.  [Filing No. 10-2 at 43-44; Filing No. 10-2 at 47-48.]  He stated that he has never told anyone that Janice K. is his wife.  [Filing No. 10-2 at 42.]  He also explained that he and Janice K. established a joint

6

checking account in order to qualify Janice K. to receive health insurance from Lilly, but he does not regularly use that account and instead keeps his money in a separate account to which Janice K. does not have access.  [Filing No. 10-2 at 46-47.]  Bank account records confirm that Juan C. has his own account in his own name, where his paychecks are deposited, [*see* Filing No. 10-2 at 112-47; Filing No. 10-2 at 151-87], and that the joint checking account has approximately $200 in it and is not utilized, [Filing No. 10-2 at 190].  Juan C. testified that he sees the same doctor as Janice K., but he does not know where the doctor got the idea that he and Janice K. are husband and wife.  [Filing No. 10-2 at 50.]

Janice K. submitted as evidence affidavits from four individuals: Ana K., who had known Janice K. for 12 years as of the date of the hearing, [Filing No. 10-2 at 99]; Roger J., who had known Janice K. for 11 years, [Filing No. 10-2 at 100]; Priscilla W., who is Janice K. and Juan C.'s next-door neighbor and had known Janice K. for 12 years, [Filing No. 10-2 at 41; Filing No. 10-2 at 101]; and Liz F., who is Janice K.'s "best and only friend," and had known Janice K. for 23 years, [Filing No. 10-2 at 40; Filing No. 10-2 at 111].  All four of these individuals attested under penalty of perjury that Janice K. had never claimed that she and Juan C. were married, and they were unaware of either Janice K. or Juan C. ever referring to each other as husband and wife or otherwise claiming to be married.  [Filing No. 10-2 at 99-101; Filing No. 10-2 at 111.]

On May 28, 2019, the ALJ issued a decision concluding that Janice K. was not eligible for SSI benefits.  [Filing No. 10-2 at 17-20.]  Specifically, the ALJ found that Janice K. was in a "holding out" relationship with Juan C., noting the following evidence: (1) Janice K. and Juan C. had been in a relationship for 12 years and she was living in his home; (2) Juan C. supports Janice K. by providing her housing and paying her living expenses; (3) Janice K. receives health insurance through Juan C.'s employer; (4) Janice K. and Juan C. "are each other's power of

attorney in the event of death"; (5) they "enjoy each other's company and they do things together"; (6) Janice K. told the SSA representative that she introduced herself to others as being married, that she considered herself and Juan C. to be in a domestic partnership, "which implies 'holding out,'" and that she was in a common law marriage with Juan C.; (7) Janice K. and Juan C. have a joint banking account; and (8) Janice K. would receive 25 percent of Juan C.'s retirement savings/life insurance in the event of his death. [Filing No. 10-2 at 19-20.] The ALJ further stated:

> Based on the foregoing, I find that the claimant and [Juan C.] are in a holding out relationship for SSI purposes. At no time was there any indication that the claimant and [Juan C.] did anything other than live as man and wife. She has lived with him virtually the entire time. In spite of contrary statements received from the claimant's close friend, neighbor, and [Juan C.'s] colleague, I find the other objective evidence more persuasive in deciding whether a holding out relationship exists. These individuals do not have program knowledge nor do they assert impartiality. The claimant's reference during a one-time consultative examination that her 'boyfriend' accompanied her to the appointment does not outweigh the treating physicians' references that she was married.
>
> Because [Juan C.] has countable resources greater than the allowable $3,000 limit, I find that the claimant does not meet the non-medical rules for SSI eligibility.

[Filing No. 10-2 at 20.] The ALJ also concluded that "[b]ased on the hearing request regarding the overpayment, the claimant is liable for the amount of $20,518 pursuant to section 1631(b)(1)(A) of the Social Security Act." [Filing No. 10-2 at 20.]

The Appeals Council denied review of the ALJ's decision, [Filing No. 10-2 at 1-3], and Janice K. timely filed this civil action, [Filing No. 1]. In connection with the briefing, the Commissioner filed the Motion to Affirm in Part and Reverse in Part…. [Filing No. 16.]

## III.

### DISCUSSION

#### A.  Finding of a "Holding Out" Marriage

Janice K. argues that the ALJ failed to support his conclusion that she and Juan C. were in a "holding out" marriage "with substantial evidence or the relevant legal standards." [Filing No. 12 at 7.]  She contends that the ALJ "simply over-relied on just a few dubious instances" of her referring to Juan C. as her husband—namely, her telling the SSA representative that she and Juan C. sometimes introduce each other as husband and wife because "it's just easier" and "isolated instances" of Juan C. being referred to as her husband or spouse in her medical records—and ignored entire lines of evidence suggesting that the couple did not actually lead anyone to believe that they were married.  [Filing No. 12 at 8.]  Specifically, Janice K. points to the following evidence suggesting that the couple does not hold themselves out as married: (1) they do not have the same last name; (2) Juan C. owns the home solely in his own name and refuses to give Janice K. a right of survivorship; (3) Juan C. has his own bank account; (4) their joint checking account was opened solely for the purpose of obtaining health insurance from Lilly; and (5) Janice K. receives health insurance from Lilly as Juan C.'s domestic partner, which is explicitly defined as a person not legally married to the employee.  [Filing No. 12 at 8-9.]  Janice K. asserts that her status as Juan C.'s "domestic partner" for purposes of obtaining health insurance belies any conclusion that they hold themselves out as married, because "[l]ogically, if there were ever a time to get married, this would have been the time to do so," but the couple's choice not to get married "supports the fact that they did not want to be married or to be considered married by anyone else."  [Filing No. 12 at 9.]  Janice K. also emphasizes that four individuals who actually know the couple affirmed, under penalty of perjury, that she and Juan C. never represent themselves as married or refer to each other as husband and wife.  [Filing No.

12 at 9.] She argues that the ALJ's rejection of the four affidavits because the witnesses lacked "program knowledge" and did not assert their impartiality was illogical. [Filing No. 12 at 15.] Janice K. asserts that cases addressing what constitutes "holding out" are "relatively rare," but she points to a few cases from other district courts, which she argues support the conclusion that she and Juan C. were not holding themselves out as married. [Filing No. 12 at 9-13.] In particular, she relies on *Beaty v. Berryhill*, 2019 WL 2103422 (E.D. Cal. May 14, 2019), in which the court concluded that the applicable regulations required evidence that both partners made affirmative representations leading others to believe they are married to support a finding by the ALJ that a "holding out" marriage existed. [Filing No. 12 at 12-13.] Janice K. asserts that there is no evidence in the record that Juan C. ever made any such representation. [Filing No. 12 at 13.] In sum, Janice K. asserts that the ALJ failed to build a logical bridge from the evidence to the conclusion and failed to support his decision with substantial evidence, because a reasonable person would not rely solely on an "unsworn, one-sided characterization of a phone interview in light of the entire lines of aforementioned evidence to the contrary." [Filing No. 12 at 16.]

In response, and in support of the Motion, the Commissioner argues that the Court should affirm the portion of the ALJ's decision concluding that Janice K. and Juan C. were in a "holding out" marriage because substantial evidence supported that conclusion. [Filing No. 16-1 at 3.] The Commissioner emphasizes that the substantial evidence standard is highly deferential, and the Court may not reweigh the evidence, resolve debatable conflicts in the evidence, or substitute its own judgment for the ALJ's. [Filing No. 16-1 at 3.] The Commissioner argues that the ALJ recognized evidence that weighed against a finding of holding out—including Janice K.'s and Juan C.'s testimony and the four affidavits—but reasonably found that other, more compelling evidence supported the finding of a holding out relationship. [Filing No. 16-1 at 4-5.]

Specifically, the Commissioner points to: (1) Janice K.'s statement to the SSA representative that they are in a common law relationship and introduce each other as husband and wife because it is "easier"; (2) the fact that the couple has a joint checking account for purposes of obtaining health insurance through Juan C.'s employer; (3) the reciprocal powers of attorney and Janice K.'s status as a beneficiary for Juan C.'s life insurance; (4) the fact that they had lived together for 12 years; (5) Juan C.'s financial support of Janice K.; and (6) the fact that "multiple treating physicians wrote in their records that [Janice K.] and [Juan C.] were married." [Filing No. 16-1 at 5.] The Commissioner contends that the ALJ reasonably credited Janice K.'s statement to the SSA representative that she and Juan C. introduce each other as husband and wife over her hearing testimony that they never do so, because Janice K. only denied doing so after she found out that holding herself out as married could result in her becoming ineligible for SSI benefits. [Filing No. 16-1 at 6.] In the Commissioner's view, neither Janice K.'s recitation of the evidence nor her citation to "three random cases" from other courts compels the conclusion that she and Juan C. did not hold themselves out as married. [Filing No. 16-1 at 7.] The Commissioner further argues that no binding legal authority requires that both spouses make affirmative representations leading others to believe they are married before a finding of holding out can be made. [Filing No. 16-1 at 7-8.] The Commissioner concedes that "the ALJ cited two irrelevant factors"—lack of program knowledge and failure to assert impartiality—in rejecting the four affidavits, but she argues that these errors "do not detract from the ALJ's finding that the other evidence he cited was more persuasive." [Filing No. 16-1 at 8.] The Commissioner asserts that the ALJ's finding of a holding out marriage is entitled to deference because it was supported by substantial evidence, and the contrary evidence "was not so compelling that a reasonable mind could have only concluded the opposite." [Filing No. 16-1 at 8.]

In reply, Janice K. argues that the Commissioner "dismisses the only relevant case law on the topic and unpersuasively parrots the ALJ's fixation with a one-sided characterization of a single phone conversation with a Social Security staffer who never provided any sworn testimony on this matter." [Filing No. 19 at 1-2.] She reiterates that "there is not a single iota of evidence" suggesting that Juan C. ever led anyone to believe that he and Janice K. were married, and argues that "[t]his alone should be outcome-determinative" because the regulation requires that both partners lead others to believe they are husband and wife. [Filing No. 19 at 2.] Janice K. also reiterates that a domestic partnership is not the same as a marriage, and choosing to pursue health insurance through a domestic partnership instead of getting married undermines any conclusion that the couple held themselves out as married. [Filing No. 19 at 3.] She contends that an "overzealous low level bureaucrat observed the error of [Janice K.'s] doctors in characterizing her relationship with [Juan C.] as a marriage," and then erroneously "concluded that a 'domestic partnership' for purposes of health insurance was an indication they were holding out as married but only remained legally single in order to artificially preserve [Janice K.'s] eligibility for [SSI]," and the ALJ accepted the SSA representative's report "without scrutinizing this conversation or the credibility of the [representative] at all," while ignoring entire lines of evidence contrary to the conclusion that the couple was holding themselves out as married. [Filing No. 19 at 4.]

In order to be eligible for SSI benefits, an individual must meet certain requirements, including that he or she may not have "more resources than are permitted." 20 C.F.R. § 416.202(d); *see also* 42 U.S.C. § 1382(a) (establishing income and resource limits for eligibility). "[R]esources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support

and maintenance." 20 C.F.R. § 416.1201(a).  In determining a claimant's resources, several things are excluded, including the home, household goods and personal effects, and one automobile used for transportation of the claimant or a member of the claimant's household. 20 C.F.R. § 416.1210; 20 C.F.R. § 416.1218(b)(1).  Additional automobiles are not excluded. 20 C.F.R. § 416.1218(b)(2).  The countable resource limit for a claimant living with a spouse is $3,000.00, while the limit for an individual claimant is $2,000. 20 C.F.R. § 416.1205.

In cases in which the claimant lives with a person who is considered to be the spouse of the claimant, the claimant's resources are deemed to include the spouse's resources, regardless of whether those resources are actually available to the claimant. 20 C.F.R. § 416.1202(a); *see also* 20 C.F.R. § 416.1802(a)(2) ("If you are married to someone who is not eligible for SSI benefits and are living in the same household as that person, we will count the value of that person's resources (money and property), minus certain exclusions, as yours when we determine your eligibility.").  The SSA "will consider someone to be [the claimant's] spouse (and therefore consider [the claimant] to be married) for SSI purposes if" the claimant "and an unrelated person of the opposite sex are living together in the same household at or after the time [the claimant] appl[ies] for SSI benefits, and [the claimant and the unrelated person] both lead people to believe that [they] are husband and wife." 20 C.F.R. § 416.1806(a)(3); *see also* 42 U.S.C. § 1382c(d) ("In determining whether two individuals are husband and wife . . . , appropriate State law shall be applied; except that . . . if a man and woman are found to be holding themselves out to the community in which they reside as husband and wife, they shall be so considered . . . .").[4]

---

[4] Although the language of the statute and regulations has not been updated, following the Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015), the SSA now recognizes same-sex marriages for SSI purposes.  *See* GN 00210.800 Supplemental Security Income (SSI) Same-Sex Marriages and Same-Sex Couples, SSA POMS GN 00210.800.

The regulations further state:

(1) If you are living with an unrelated person of the opposite sex, you and the person you are living with must explain to us what your relationship is and answer questions such as the following:

    (i)    What names are the two of you known by?

    (ii)    Do you introduce yourselves as husband and wife? If not, how are you introduced?

    (iii)    What names are used on mail for each of you?

    (iv)    Who owns or rents the place where you live?

    (v)    Do any deeds, leases, time payment papers, tax papers, or any other papers show you as husband and wife?

(2) We will consider you married to the person you live with unless the information we have, including the answers to the questions in paragraph (c)(1) of this section, all considered together, show that the two of you do not lead people to believe that you are each other's husband and wife.

20 C.F.R. § 416.1826(c).

Janice K. is correct that caselaw addressing whether substantial evidence supports the ALJ's determination that the claimant was in a holding out marriage is limited. *See Koziol v. Comm'r of Soc. Sec.*, 2021 WL 930698, at *6 (N.D. Iowa Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 736896 (N.D. Iowa Feb. 25, 2021) ("Courts have had only a few occasions to address whether substantial evidence supported an ALJ's holding-out determination."). Neither party has identified—and the Court's research has not revealed—any caselaw addressing this issue that is binding on this Court. However, a number of non-binding cases are worthy of comment.

Another District Court in this Circuit addressed the holding out issue in *Smith v. Sullivan*, 767 F. Supp. 186, 188-89 (C.D. Ill. 1991). In that case, the court concluded that substantial evidence supported the ALJ's determination that the claimant, Charles, and his partner, Cindy,

held themselves out as a married couple. *Id*. at 188-89. Specifically, the court recognized the following evidence as sufficient to support the ALJ's conclusion: (1) on his SSI application, Charles checked a box designating that his claim was for a "couple" and indicated that he was married to Cindy, although he noted that it was "not a ceremonial marriage"; (2) on her SSI application, Cindy indicated that she was married to Charles and lived with him, and further stated that although the couple was not legally married, they "do hold [them]selves out to the community as husband and wife"; (3) Cindy wrote on a document relating to her SSI application that she and Charles were not married but hold themselves out to be married; (4) Charles wrote on two SSI documents that he was married and living with a spouse and that he and Cindy had been living together as husband and wife and would continue to do so indefinitely; and (5) to their doctors, Charles and Cindy had each separately referred to themselves as married. *Id*.[5]

In *Beaty v. Berryhill*—the case upon which Janice K. principally relies—the District Court for the Eastern District of California determined that the ALJ's finding that the claimant, Susan Beaty, and her partner, David Dorney, held themselves out as married was not supported by substantial evidence. 2019 WL 2103422, at *3-5. In doing so, the court explained:

> The ALJ's focus on the overall nature of plaintiff's and Dorney's relationship – as opposed to the names, statements, and language they used to outwardly present themselves – led to a determination, unsupported by substantial evidence, that the two were holding themselves out to the community in which they reside as husband and wife. The record supports the ALJ's findings that plaintiff and Dorney have lived together continuously in a committed (though non-romantic) relationship for many years, with Dorney supporting plaintiff and their children. However, such findings do not thereby establish that plaintiff and Dorney held themselves out as married. As much as plaintiff and Dorney's living arrangement

---

[5] Charles appealed the decision on other grounds, and the Seventh Circuit affirmed, clearly acknowledging that the issue of whether substantial evidence supported the ALJ's conclusion that Charles and Cindy were holding themselves out as married was not raised in the appeal. *See Smith v. Shalala*, 5 F.3d 235, 238 (7th Cir. 1993) ("Mr. Smith does not contest the district court's finding that he and Cindy Smith held themselves out as married; however, he does appeal the court's determination that the 'deemed married' classification is constitutional.").

> may mirror traditional conceptions of a married couple, section 1382c(d)(2) and the spousal-deeming regulations require affirmative representations by both an applicant and her disputed spouse holding themselves out as married, or leading people to believe they are married.
>
> . . .
>
> The limited case law interpreting SSA spousal deeming further supports a requirement that the determination rest on each individual's affirmative statements and representations, not on the general impression their relationship gives or its functional equivalence to marriage in the view of the agency.

*Id.* at *4 (cleaned up) (citations omitted).  The court determined that the record contained three "affirmative, if somewhat contradictory, statements" by Beaty on a single SSI eligibility form suggesting that she and Dorney were married or held themselves out as married, and "zero similar statements by Dorney." *Id.*  The court reasoned that, "[i]f this were the only evidence in the record, these statements might be sufficient to support a spousal deeming determination," but "the record [was] replete with [Beaty's] and Dorney's assertions to the contrary" on other forms and in their hearing testimony.  *Id.* at *5.  Ultimately, the court concluded that the record indicated that "Dorney supported [Beaty], who did not work, and that [Beaty] and Dorney 'lived together as a financial unit,' jointly leased residences, moved together with their children, and shared vehicles," but there was no indication that "the two were known by the same last name, were listed on documents as husband and wife, or represented to others that they were married," and based on this record, there was "inadequate evidence from which to conclude that [Beaty] and Dorney affirmatively held themselves out as married for purposes of SSI benefits calculation." *Id.*  Moreover, the *Beaty* court admonished that:

> The SSA has chosen "holding out as married" as the standard for spousal deeming. Whether some other standard would better serve the purposes of the statute, or better address the variety of contemporary relationships and mutual-support arrangements, is not a question for this court.  Neither is it a matter within the discretion of the ALJ. Because the ALJ was not free to substitute evidence of co-parenting, co-habitation, and financial support for evidence of public presentation as married, his finding constitutes reversible error.

*Id.* The court further determined that ordering an award of benefits was appropriate in light of the fact that there was "overwhelming evidence that the two represent themselves as individuals, no matter how much their living situation may functionally approximate a traditional marriage," and further administrative proceedings were therefore unnecessary. *Id.* at *6.

Finally, in a relatively recent decision, the District Court for the Northern District of Iowa surveyed the relevant caselaw and observed the following: (1) "[c]ourts have held substantial evidence supported the ALJ's holding-out determination when *both* members of the relationship described the other as their spouses in numerous Social Security forms"; (2) "[c]ourts have also affirmed the ALJ's finding of a holding-out relationship when the claimant reported such a relationship to the [SSA] for years, reversing course only once the claimant's benefits were stopped because of the spouse's income"; (3) "[w]hen the claimant reported a holding-out relationship only a single time, in one Social Security form, [one] court has upheld the ALJ's holding-out finding when additional evidence existed that the claimant held herself out as married";[6] (4) one "court has reversed an ALJ's holding-out finding based on reports of a spouse in Social Security forms when the evidence established no romantic or financial relationship between the claimant and the mother of his child, who he lived with"; (5) "[i]n other cases in which the only evidence of 'holding out' appeared on a single Social Security form, courts have split on whether an intertwined financial relationship is sufficient additional evidence to support an ALJ's holding-out finding"; and (6) "[o]nly one court has addressed whether substantial evidence supported an ALJ's holding-out finding when the claimant never reported a holding-out

---

[6] *See Wilson v. Heckler*, 617 F. Supp. 899, 900 (D. Mont. 1985) (finding that there was sufficient evidence upon which the SSA Appeals Council could base its decision that the claimant, Patricia Wilson, and her partner, Robert Wilson, were holding themselves out as married, given that: (1) Patricia's first application for benefits listed her and Robert as husband and wife; (2) the couple lived together; and (3) Patricia wore a wedding ring and used the name "Mrs. Robert Wilson").

relationship to the [SSA]," and that court affirmed the ALJ's finding based on other evidence. *Koziol*, 2021 WL 930698, at *6-7 (collecting cases) (emphasis original).

The *Koziol* court went on to conclude that substantial evidence supported the conclusion that the claimant, Lynn, and her ex-husband, Thomas, held themselves out as married based on the following evidence: (1) the couple had a "fairly cohesive financial relationship"; (2) they had lived together for more than 15 years; (3) Thomas owned the home they lived in and paid the mortgage, while Lynn paid the utilities, all but one of which was in Thomas's name alone; (4) Thomas owned both vehicles the couple drove; (5) although they maintained separate bank accounts, Thomas routinely transferred money to Lynn's account; (6) Thomas claimed Lynn as a dependent on his tax return; (7) Lynn listed Thomas as her emergency contact and as the beneficiary of her life insurance policy; (8) Lynn referred to Thomas as her husband while speaking to her doctor, and treatment notes reflected that she wore a wedding ring; (9) Lynn "repeatedly" referred to Thomas as her husband to two separate SSA employees, and "expressed confusion about the date of their divorce, . . . suggesting that the divorce had no impact on their relationship"; (10) Lynn stated to an SSA employee that she and Thomas divorced so she would be eligible for SSI benefits; and (11) Lynn and Thomas shared the same last name, and Lynn testified that "everybody assumes" they are married. *Id.* at *8.

To determine whether substantial evidence supports the ALJ's conclusion that Janice K. and Juan C. hold themselves out as married, the Court first turns to the relevant statute and regulations. Consistent with the analysis conducted by the *Beaty* court, this Court concludes that plain text of the relevant statute and regulations imposes two requirements on the kind of evidence necessary to support a finding of holding out: first, that the evidence must demonstrate

affirmative representations that the relationship is a marriage; and second, that the evidence must show that both partners outwardly present their relationship as a marriage.

Specifically, the statute and regulations all refer to the claimant and the alleged spouse "holding themselves out" as a married couple or "lead[ing] people to believe" they are a married couple.  *See* 42 U.S.C. § 1382c(d) ("holding themselves out to the community"); 20 C.F.R. § 416.1806(a)(3) ("lead people to believe that you are husband and wife"); 20 C.F.R. § 416.1826(c) ("lead people to believe").  As the *Beaty* court observed, this language implies a focus on the couple's affirmative, outward presentation of their relationship to others—including the names, statements, and language they use to describe their relationship—rather than on how closely any particular aspects of the relationship mirror traditional concepts of marriage.  The caselaw outlined above is consistent with this interpretation, as each of the cases finding holding out involved the couple making affirmative representations that they were married.  *See Smith,* 767 F. Supp. at 188-89 (both Charles and Cindy wrote on SSI forms that they were husband and wife and separately referred to each other as such to their doctors); *Koziol,* 2021 WL 930698, at *8 (noting, in relevant part, that Lynn wore a wedding ring and repeatedly referred to Thomas as her husband); *Wilson,* 617 F. Supp. at 900 (SSI application listed claimant and her partner as husband and wife, and Patricia wore a wedding ring and used the name "Mrs. Robert Wilson").

In addition, the statute and regulations mention "a man and woman"—*i.e.*, two people— as well as "both" and "the two of you" as the actors whose conduct is relevant to determining whether the claimant and their spouse should be deemed married for purposes of determining SSI eligibility.  *See* 42 U.S.C. § 1382c(d) ("man and woman"); 20 C.F.R. § 416.1806(a)(3) ("you both"); 20 C.F.R. § 416.1826(c) ("the two of you").  This language suggests that the evidence must show that *both* partners affirmatively represent to others that they are married.

Turning to the evidence in this case, the Court concludes that substantial evidence does not exist to support the ALJ's finding that Janice K. and Juan C. hold themselves out as married, and the ALJ failed to build a logical bridge from the evidence to his conclusion. Among the facts that the ALJ cited in support of his conclusion are the length of Janice K. and Juan C.'s relationship, their living arrangements, Juan C.'s financial support of Janice K., their reciprocal powers of attorney in the event of death, and Janice K.'s status as a beneficiary on Juan C.'s life insurance. Although these aspects of Janice K. and Juan C.'s relationship in some ways mirror aspects of traditional marriage, they do not constitute affirmative representations of marriage. To reiterate, "holding out" is the standard, not cohabitation, financial support, or a "living situation [that] may functionally approximate a traditional marriage." *See Beaty*, 2019 WL 2103422, at *5-6.

The SSA representative conducting the PERC, and in turn the ALJ, also relied on the fact that some of Janice K.'s medical records purportedly listed Juan C. as her husband. However, these medical records are not part of the administrative record that is currently before the Court, [*see* Filing No. 10-2], and it is unclear whether they were part of the evidence actually reviewed by the ALJ. Without these records, the Court cannot determine whether they exist or whether they in fact evidence "holding out," particularly in light of the ALJ's recognition that in at least one medical record, it was noted that Janice K. referred to Juan C. as her "boyfriend." [*See* Filing No. 10-2 at 20 (ALJ finding that Janice K.'s "reference during a one-time consultative examination that her 'boyfriend' accompanied her to the appointment does not outweigh the treating physicians' references that she was married"). Moreover, the ALJ's reliance on alleged notations in medical records is particularly confusing given his own statement at the hearing that it happens "all the time" that "doctors get [something] in their mind," and it "get[s] in the file one

time and . . . carries through for the rest of eternity." [Filing No. 10-2 at 32.]  It is impossible to discern from the evidence currently before the Court whether these medical records document an assumption by Janice K.'s doctors or affirmative representations by Janice K. herself.

The ALJ also cited the fact that Janice K. receives health insurance from Juan C.'s employer as his "domestic partner," and the SSA representative found that fact particularly relevant to the finding of holding out.  Although the ALJ correctly pointed out that "Lilly's definition of domestic partnership is not controlling" because the relevant standards for holding out are provided by the applicable statutes and regulations, he failed to meaningfully articulate any reasoning supporting his conclusion that a domestic partnership "implies 'holding out.'" [Filing No. 10-2 at 20.]  The phrase "domestic partnership" has been understood—both legally and colloquially—to refer to a relationship that is distinct from a marriage.  *See, e.g.*, *Perry v. Brown*, 671 F.3d 1052, 1078 (9th Cir. 2012), *vacated and remanded on other grounds sub nom. Hollingsworth v. Perry*, 570 U.S. 693 (2013) (recognizing that "the word marriage has a unique meaning, and there is a significant symbolic disparity between domestic partnership and marriage") (internal quotation marks and citations omitted); *Barron v. Apfel*, 209 F.3d 984, 985 (7th Cir. 2000) ("Common law marriage is not a synonym for cohabitation, 'domestic partnership,' or contract.").  And although Lilly's definition of domestic partnership is not controlling, it provides vital context for understanding the affirmative representations that Janice K. and Juan C. made when obtaining insurance under Lilly's domestic partnership standards.  For insurance purposes at Lilly, domestic partners are people that are not married, consistent with the meaning of that phrase in other contexts.  Put simply, it is illogical to consider Janice K.'s and Juan C.'s explicit representation that they are not married as evidence that they hold themselves out as married.

In part, the ALJ also relied on statements that Janice K. purportedly made to the SSA representative regarding her relationship with Juan C.—namely, that they introduce each other as husband and wife "because it's just easier" and that Janice K. "acknowledged" being in a "common law relationship" with Juan C.  Importantly, the only evidence in the record suggesting that Janice K. made these statements is the SSA representative's report of the conversation.  In other cases where courts have relied on statements made to the SSA, those statements involved the claimant or the claimant's partner filling out a form, checking a box, or writing something on a document.  *See, e.g.*, *Beaty*, 2019 WL 2103422, at *4; *Koziol*, 2021 WL 930698, at *6-7 (collecting cases); *Smith*, 767 F. Supp. at 188-89; *Wilson*, 617 F. Supp. at 900.  That is different from an SSA representative recording his or her own characterizations of a conversation, and neither the representative nor Janice K. provided any specific testimony concerning the details of this conversation.[7]  Assuming, however, that Janice K. did in fact make these statements, other issues persist with the ALJ's reliance on them.

Janice K.'s statements that she and Juan C. are in a "common law relationship" and that they introduce each other as husband and wife "because it's just easier" are insufficient to demonstrate holding out.  First, there is no evidence that Juan C. made any similar statements,

---

[7] Based on this lack of detail, it is possible that the representative's report may not paint a full picture of what Janice K. actually said.  For example, the representative wrote that Janice K. "acknowledged that she has a common law relationship with Juan [C.]," [Filing No. 10-2 at 79], but the term "acknowledged" is vague, and it is unclear whether Janice K. was responding to prompting by the representative or if "common law relationship" was a term Janice K. introduced into the conversation.  In any event, it is unclear what "common law relationship" means.  Assuming "common law relationship" was meant to refer to "common law *marriage*," it is worth noting that common law marriages are not recognized in Indiana.  *See, e.g., In re Marriage of Davis & Summers*, 1 N.E.3d 184, 186 (Ind. Ct. App. 2013) (recognizing that "since January 1, 1958, common-law marriages in Indiana are prohibited").  These open questions render the report less probative and potentially less reliable than other kinds of statements made to the SSA. Regardless, it is not the Court's role to reweigh the evidence or make credibility determinations, and therefore the Court accepts the report as an accurate representation of Janice K.'s statements.

and the plain text of the regulations and statute suggest that *both* partners must hold themselves out as married.  Second, even if one partner's statements alone could be sufficient, there is significant contradictory evidence in this case, such that a reasonable person would not accept Janice K.'s purported statements as adequate to support the ALJ's conclusion.  Janice K. and Juan C. both testified that they do not tell other people they are married.  Four individuals who have known Janice K. and/or Juan C. for the duration of their relationship or longer stated under penalty of perjury that Janice K. and Juan C. never refer to themselves as married or refer to each other as husband and wife.  As the Commissioner concedes, the reasons the ALJ gave for discrediting these affidavits—that the individuals "do not have program knowledge nor do they assert impartiality"—are "irrelevant" and not a valid basis for rejecting the affidavits.  [Filing No. 16-1 at 8.]  And although the ALJ further states that "other objective evidence" is more persuasive than the affidavits, it is unclear what this "other objective evidence" is.  There does not appear to be any "objective evidence"—such as documents or third-party testimony—that Janice K. and Juan C. affirmatively represent themselves as married.  In addition to the hearing testimony, affidavits, and "domestic partnership" designation, Janice K. and Juan C. have different last names, and bank records show that Juan C. has his own checking account where his paychecks are deposited.  The only evidence of holding out—that is, the only evidence of affirmative, outward presentations of marriage—that the ALJ can point to is Janice K.'s purported statements to the SSA representative that she and Juan C. introduce themselves as husband and wife and are in a "common law relationship."  In light of all the evidence to the contrary, and the fact that there are no similar representations made by Juan C., a reasonable person would not accept this evidence as sufficient to support the ALJ's conclusion.

The ALJ's statement that "[a]t no time was there any indication that [Janice K.] and [Juan C.] did anything other than live as man and wife," is simply inaccurate.  As the foregoing review of the evidence shows, at various times there were a number of indications that Janice K. and Juan C. lived as unmarried boyfriend and girlfriend, and there is a lack of evidence demonstrating that they both made affirmative representations to others that they are married. The ALJ's conclusion is not supported by substantial evidence, and he failed to build a logical bridge from the evidence to his conclusion.  Accordingly, the ALJ's decision is **REVERSED**, and the Commissioner's Motion, [Filing No. 16], is **DENIED IN PART** to the extent she asks the Court to affirm the portion of the decision regarding the holding out finding.

### B.  Overpayment Finding

In her Motion, the Commissioner asserts that "[l]ikely due to clerical error, the ALJ included [in his decision] language holding [Janice K.] liable for an overpayment, which did not exist."  [Filing No. 16 at 1.]  The Commissioner asks the Court to reverse that portion of the ALJ's decision, or in the alternative, modify the ALJ's decision by removing the sentence that states: "Based on the hearing request regarding the overpayment, the claimant is liable for the amount of $20,518 pursuant to section 1631(b)(1)(A) of the Social Security Act."  [Filing No. 16 at 1-2.]  Janice K. agrees that this sentence was included in error.  [Filing No. 19 at 5.]

For the reasons stated above, the ALJ's decision is reversed, including the overpayment finding.  Accordingly, and based on the parties' agreement, the Commissioner's Motion, [Filing No. 16], is **GRANTED IN PART** to the extent that it seeks reversal of the portion of the ALJ's decision concerning overpayment.

### C. Remedy

In her initial brief, Janice K. "requests that this Court order a finding of disability based on the evidence and/or remand this case with instructions to properly evaluate all of the evidence of record with respect to [her] physical impairments and issue a new decision based on substantial evidence and the proper legal standards." [Filing No. 12 at 16.]  In her reply brief, however, she asserts that "this Court should re-instate her [SSI] as of the date she was previously deemed disabled by the [SSA]." [Filing No. 19 at 5.]  The Commissioner does not appear to take a position as to the appropriate remedy in the event that the Court reverses the portion of the ALJ's decision regarding holding out.  [*See* Filing No. 16; Filing No. 16-1.]

As an initial matter, it is not disputed that the SSA has already determined that Janice K. is medically disabled, and that decision was not challenged by any party in this case.  [*See, e.g.*, Filing No. 10-2 at 17 (ALJ's decision acknowledging that Janice K. "was found to meet the medical requirements" for SSI).]  It therefore would not be necessary or appropriate for the Court to order a finding of disability or remand this case for further evaluation of Janice K.'s physical impairments.  Those issues have already been resolved.  Instead, the Court must determine whether to remand this case for further proceedings on the holding out issue, or remand with instructions to reinstate Janice K.'s benefits.

As noted above, remand is generally appropriate when a decision is not supported by substantial evidence, and "[a]n award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Briscoe ex rel. Taylor*, 425 F.3d at 355 (quoting *Campbell*, 988 F.2d at 744).  The evidence in the record currently before the Court does not support a finding that Janice K. and Juan C. hold themselves out as married for SSI purposes, and can only support the conclusion that they do not.  Accordingly,

this case is **REMANDED** with instructions to reinstate Janice K.'s SSI benefits as of the date she was previously determined to be disabled and to calculate Janice K.'s SSI payments without deeming Juan C. to be her spouse. *See Beaty*, 2019 WL 2103422, at *6 (remanding the case "with instructions to cease spousal deeming in calculating plaintiff's SSI payment going forward, and to restore the benefits withheld since spousal deeming began").

## IV.
### CONCLUSION

Based on the foregoing, the Commissioner's Motion, [16], is **GRANTED IN PART** to the extent that it seeks reversal of the portion of the ALJ's decision ordering liability for overpayment, and **DENIED IN PART** to the extent that it requests that the Court affirm the remainder of the ALJ's decision. The ALJ's decision is **REVERSED** and this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g) (sentence four) with instructions to reinstate Janice K.'s SSI benefits as of the date she was previously determined to be disabled and to calculate Janice K.'s SSI payments without deeming Juan C. to be her spouse. Final judgment shall issue accordingly.

Date: 9/29/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

26